HIRAM GÓMEZ, demandante y apelado, *v.* LUIS BRAVO, THE AMERICAN COLONIAL BANK, THE ROYAL BANK OF CANADA, demandados y apelante el segundo.

No. 3298.—*Visto:* Junio 18, 1924. *Resuelto:* Abril 20, 1925.

1. EVIDENCIA—PRUEBA DOCUMENTAL—ACTOS PÚBLICOS U OFICIALES, PROCEDIMIENTOS, RECORDS Y CERTIFICADOS—ESCRITURAS PÚBLICAS.—Aceptado por un demandado el otorgamiento de una escritura pública, ésta es admisible en evidencia como prueba de que las partes en ella celebraron el contrato contenido en la misma.

2. EVIDENCIA—PRUEBA DOCUMENTAL—ESCRITOS PRIVADOS Y PUBLICACIONES (*Publications*)—CHEQUES SOBRE ENTREGA DE DINERO CONFESADO COMO DEBIDO.—Reconocido por escritura pública el haberse recibido con anterioridad cierta suma para la refacción de una finca, cheques para demostrar la entrega del dinero confesado como debido, son admisibles en evidencia.

3. CONTRATOS DE REFACCIÓN AGRÍCOLA—PREFERENCIA DEL CRÉDITO REFACCIONARIO—PRUEBA DE LA INVERSIÓN DEL DINERO ENTREGADO.—Ni bajo la Ley Hipotecaria, ni bajo la Ley No. 37 de 1910 (Leyes de 1910, pág. 122) sobre contratos de refacción agrícola, etc., es necesario probar, para que un crédito refaccionario tenga el carácter de preferente, que el dinero entregado fué invertido en mejorar la finca objeto de la refacción.

4. Contratos de Refacción Agrícola—Simulación—Evidencia—Insuficiencia
   de la Prueba.—El hecho de que una persona que tiene un contrato de
   refacción agrícola sea acreedor hipotecario de la finca objeto de la refacción
   y existan créditos hipotecarios vencidos anteriores al de él, no es bastante
   para estimar el contrato de refacción simulado.

5. Fraude—Evidencia—Peso y Suficiencia de la Prueba para Justificarlo.—
   El fraude debe probarse con hechos incontestables, o por lo menos con una
   preponderancia de prueba, pues su existencia no puede estimarse establecida
   por simples conclusiones, conjeturas y sospechas. (*Arruza* v. *Laugier,* 14: 25,
   seguido.)

Sentencia de *Angel Acosta,* J. (Mayagüez), declarando con lugar
   la demanda y sin lugar la contrademanda, con costas. *Confir-*
   *mada.*

*Joaquín Vendrell,* abogado del apelante; *José Sabater,* abogado del
   apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

The American Colonial Bank demandó a don Luis Bravo
y a otro cobrándoles una obligación personal constante en
un pagaré de $3,800 y para asegurar la efectividad de la
sentencia les embargó varios bienes, entre ellos la hacienda
Constancia y sus cosechas del 1921 hasta el año 1925, pro-
piedad de don Luis Bravo.   También el Royal Bank of Ca-
nada hizo igual embargo en otro pleito que seguía contra
Bravo y otro, también por obligación personal.

En vista de esos hechos don Hiram Gómez presentó con-
tra ambos bancos y contra Luis Bravo y su esposa la de-
manda que origina esta apelación a fin de que se declarase
que un contrato de refacción agrícola que celebró con don
Luis Bravo le da preferencia sobre dichos bancos para co-
brar con las expresadas cosechas el dinero que facilitó para
el cultivo de la expresada finca, cuyos frutos le fueron da-
dos en garantía de $8,000 según escritura pública de 8 de
agosto de 1921.

El Royal Bank of Canada se allanó a la demanda pero
el American Colonial Bank se opuso a ella y por contrade-
manda solicitó que se declare que tal escritura es simulada
y fraudulenta.

Don Luis Bravo y su esposa no contestaron la demanda

y les fué anotada la rebeldía, y celebrado el juicio recayó sentencia declarando con lugar la demanda y sin lugar la contrademanda del American Colonial Bank, quien interpuso esta apelación.

El demandante presentó en el juicio la escritura pública número 36 de 8 de agosto de 1921 en la que los esposos Bravo como dueños de la hacienda Constancia reconocen haber recibido antes de esa fecha de don Hiram Gómez la cantidad de $7,000 más otros mil dólares ante el notario en el acto de firmarse la escritura para cultivar y mejorar dicha hacienda, comprometiéndose a devolver dicha suma de $8,000 con el interés del 10 por ciento anual hasta su pago total en todo el tiempo comprendido desde la fecha de la escritura hasta el 31 de diciembre de 1923, dejando afecto y gravado a la seguridad del pago de dicho préstamo todo el café que produzca dicha finca en las cosechas de 1921 y en las de 1922 y 1923, y conviniéndose además que en caso de que no quedase completamente satisfecha la suma del préstamo y sus intereses antes de su vencimiento quedarían gravadas las subsiguientes cosechas de café de dicha finca hasta el total saldo de la cuenta. De dicha escritura aparece que fué anotada en el registro de contratos agrícolas el 16 de agosto de 1921.

También el demandante prestó declaración según la cual desde febrero de 1917 venía prestando dinero al Sr. Bravo para el cultivo y mejoramiento de su dicha finca hasta llegar su crédito por ese concepto a la cantidad de $11,185.81: que habiéndole pedido el Sr. Bravo más dinero en agosto de 1921 el declarante solicitó de él que le otorgara una escritura de refacción agrícola por $8,000, que no cubría toda su acreencia pero que le era bastante porque a su juicio la finca era suficiente para cubrir todo su crédito: que todas y cada una de las cantidades que facilitó al Sr. Bravo fueron para el mejoramiento y cultivo de la expresada finca, la que gracias a su dinero aumentó grandemente su producción: que los cheques que libró a favor de terceras personas lo

hizo así por orden del Sr. Bravo y para gastos de la hacienda: que después de la escritura entregó en tres ·ocasiones al Sr. Bravo hasta 700 dólares para la recolección y transporte de la cosecha de café de 1921: que el Sr. Bravo le entregó esa cosecha la que produjo en venta la cantidad de $3,008.25 de los que descontados los 700 dólares que le adelantó para la recolección le abonó a su cuenta $2,308.25: que en la fecha que declaraba, 8 de noviembre de 1923, el saldo a su favor ascendía a $5,691.75. También declaró haber pagado algunas facturas contra la finca.

Para justificar que desde antes de otorgarse la escritura había entregado al Sr. Bravo dinero por más cantidad de los $7,000 que reconoció deberle, y la entrega de los otros mil dólares, presentó unos cheques librados por él desde el 3 de febrero de 1917 hasta el 8 de agosto de 1921 que suman unos $15,000, expedidos unos a la orden ·de don Luis Bravo, otros al portador y seis a favor de tres personas, por pequeñas cantidades éstos. Asimismo presentó su libro en que figura la cuenta de refacción del Sr. Bravo que empieza el 3 de febrero de 1917 hasta el 9 de abril de 1923, que arroja un balance a su favor de $5,680.35.

Alega el apelante en los primeros motivos de su recurso que no debió ser admitida como prueba la escritura número 36 de 8 de agosto de 1921 sin justificarse previamente la entrega de dinero: que tampoco debieron ser admitidos los cheques que fueron presentados, unos porque son de fecha muy remota; otros porque fueron expedidos al portador y algunos a favor de terceras personas; y todos porque no resulta que fueron entregados para la refacción.

[1] La escritura mencionada era admisible como prueba de que don Hiram Gómez y los esposos Bravo celebraron dicho contrato pues es un documento público, y además porque el apelante aceptó en su contestación y en la contrademanda que fué otorgado, aunque alegando que es simulado y fraudulento; [2] y en cuanto a los cheques presentados para demostrar que el demandante había entregado al Sr.

Bravo antes de firmarse la escritura los $7,000 en ella confesados como debidos, y aún mayor cantidad, también eran admisibles porque habiendo declarado don Hiram Gómez que las cantidades por ellos representadas fueron entregadas al Sr. Bravo para el cultivo y mejoramiento de su finca, declaración que la corte creyó, son prueba de la existencia anterior de esa cuenta de refacción y de que en la fecha de la escritura el Sr. Bravo debía por tal concepto al Sr. Gómez los $7,000 confesados debidos en ella, y mayor cantidad. También eran admisibles los cheques librados al portador y a favor de terceras personas porque el Sr. Gómez declaró que aquéllos fueron entregados al Sr. Bravo y que los expidió a terceras personas por orden del Sr. Bravo y para gastos de la finca.

La verdadera cuestión en este pleito gira sobre la siguiente cuestión de derecho.

[3] Sostiene el apelante que para que un crédito tenga el carácter de refaccionario con la preferencia que le da la ley no basta probar que se ha entregado dinero sino que para que exista el carácter preferente del crédito ha de probarse también que el dinero entregado ha sido invertido en mejorar la finca.

En este caso se ha probado que don Hiram Gómez entregó su dinero en préstamo al Sr. Bravo para el mejoramiento y cultivo de la finca Constancia pero no hay evidencia tendente a probar que todos y cada uno de los dólares que facilitó fueron empleados por el dueño de la finca en peones, materiales, etc. para mejorarla, pero creemos que el Sr. Gómez no tenía que presentar tal evidencia para que su crédito pueda ser considerado como refaccionario, pues aunque el Sr. Barrachina y el Sr. Morell, citados por el apelante, comentando el crédito refaccionario de la ley hipotecaria sostienen que tal prueba es necesaria, nosotros convenimos mejor con la opinión del Sr. Galindo y Escosura de que si bien en el derecho común el crédito refaccionario existe cuando el dinero se invierte en mejorar la cosa, sin

embargo la ley hipotecaria se ha apartado de esa doctrina al conceder prelación al crédito refaccionario, teniendo por tal no al invertido en la obra sino al recibido para ella, porque concede el privilegio al crédito anotado, que consiste en las cantidades que se adelantan y no en las que se invierten. En efecto el artículo 59 de dicha ley (Comp. 1911, Sec. 6743) dice que el acreedor refaccionario podrá exigir anotación sobre la finca refaccionada por las cantidades que de una vez o sucesivamente *anticipare*. Es cierto que el dinero se da para invertirlo en el mejoramiento de la finca pero si se adoptara criterio contrario al que exponemos se privaría a los dueños de fincas de las facilidades que le prestan los créditos refaccionarios para mejorarlas pues las dificultades en que como cuestión de hecho se encontrarían los acreedores para probar que realmente cada uno de los dólares que adelantaron para refacción fueron empleados por el dueño de la finca en el mejoramiento de ella ahuyentarían al capital u obligarían al acreedor a tener una intervención directa y quizás exclusiva en el empleo de su dinero para poder probar el día que su crédito fuese impugnado que se invirtió en mejorar la finca, quedando de este modo los dueños de fincas en una situación deprimente y ridícula. Por esto creemos que el hecho cierto de haberse adelantado el dinero para la refacción de una finca y su anotación en el registro crea la preferencia contra otros acreedores.

Hemos considerado hasta ahora esa cuestión bajo la ley hipotecaria aunque el contrato que motiva este pleito está regido por la ley especial número 37 de 1910 (Leyes de 1910, p. 122) sobre contrato de refacción agrícola y molienda de cañas y para otros fines, por la similitud que hay entre las dos. En efecto, la sección primera de la ley número 37 dice que se entiende por contrato de refacción agrícola aquél mediante el cual una de las partes *entrega* y la otra recibe, con carácter devolutivo, determinadas cantidades en dinero efectivo o en especies, bien de una sola vez o en sucesivas oca-

siones, para atender a la administración, sostenimiento, cultivo o mejoramiento de fincas rústicas, quedando afectos y gravados los frutos de las mismas fincas al pago de las cantidades *recibidas,* con los intereses acordados; y dispone la sección 2 que el pago de las cantidades recibidas por el terrateniente será estipulado en dinero efectivo, o en la especie de frutos rendidos por la finca refaccionada, dentro del plazo' señalado por los contratantes. Por los preceptos citados se ve que el contrato de refacción agrícola existe por la entrega de dinero o especies para atender a la finca y no por el empleo de tal dinero o especies en ella, por lo que anotado un contrato de esa naturaleza en el registro que dicha ley crea y probada la realidad de tal entrega dicho crédito tiene para su cobro la preferencia que le concede la sección 4 de la expresada ley sobre los créditos posteriores de cualquier naturaleza, con excepción de los créditos por contribuciones, en cuanto a los frutos de la finca refaccionada, durante los años comprendidos en el contrato y siempre hasta que el acreedor sea completamente satisfecho del total importe de su crédito.

[4, 5] También alega el apelante que la corte inferior erró al no estimar probado que ese contrato de refacción es simulado y falso, pero el hecho de que don Hiram Gómez fuese un acreedor hipotecario por $8,000 de la finca y que hubiese otros créditos hipotecarios vencidos anteriores al de él no es bastante para estimar que el contrato de refacción es simulado por haber tenido por objeto cobrarse el apelado su crédito hipotecario con preferencia a los acreedores hipotecarios anteriores. No solamente el fraude debe probarse con hechos incontestables, o por lo menos con una preponderancia de prueba, pues su existencia no puede estimarse establecida por simples conclusiones, conjeturas y sospechas, como se dijo en el caso de *Arruza* v. *Laugier,* 14 D.P.R. 25, sino que en el presente caso se ha probado que desde 1917 a 8 de agosto de 1921 el apelado había prestado al Sr. Bravo

cantidades por más de $14,000, que en dicha última fecha daba un balance a su favor de $11,000 y pico.

En vista de todo lo expuesto *creemos justificada la sentencia de la corte inferior con la imposición de costas hecha al banco apelante, y debemos confirmarla.*