THE TEXAS COMPANY (P. R.), INC., demandante y apelada, *v.* JUAN ESTRADA, demandado, y BERNARDO ALVAREZ SANTOS, interventor y apelante.

Núm. 6923.—*Sometido:* Noviembre 20, 1936.—*Resuelto:* Diciembre 18, 1936.

*Arturo Aponte* y *R. García Cintrón,* abogados del apelante; *R. Castro Fernández,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

The Texas Co. (P. R.) Inc. entabló demanda para recobrar la suma de $2,617.86, importe de gasolina y otros productos vendidos al demandado, en cuenta corriente, y embargó tres automóviles pertenecientes a Juan Estrada. Bernardo Alvarez Santos radicó demanda de intervención, en la que alega que en fecha 13 de junio de 1932, el demandado constituyó hipoteca a favor del interventor sobre los tres automóviles embargados por The Texas Co., para garantizar un pagaré de $3,000 otorgado por el demandado a favor del interventor y que había de vencer el 13 de junio de 1933. La referida hipoteca fué inscrita en el Registro de Hipoteca de Bienes Muebles, en Caguas. Alega el interventor que la hipoteca no ha sido satisfecha, ni tampoco el semestre de intereses anticipados que venció en diciembre 14, 1932; que la demandante no ha consignado en la Secretaría de la corte de distrito el importe de dicha hipoteca e intereses, según lo preceptuado por la Ley núm. 71 de 1930 (pág. 449), y que por esas razones debe anularse el embargo y ordenarse al márshal que devuelva al demandado los tres automóviles embargados, hasta que la demandante deposite el importe de la hipoteca a favor del interventor.

En su contestación a la demanda de intervención, alegó la compañía demandante que el contrato de hipoteca y el pagaré por el mismo garantizado son simulados, nulos e inexistentes por falta de causa o consideración, por no haber prestado suma alguna el interventor al demandado Juan Estrada, y que la inscripción de dicha hipoteca debe ser cancelada en el Registro.

La corte inferior, por su Juez Interino, Hon. Tomás Torres Pérez, resolvió ''que se trata de una simulación llevada a cabo entre el demandado Juan Estrada y el interventor, mediante el otorgamiento de una hipoteca para garantizar un préstamo que no se ha probado ni aparece del documento de hipoteca que entregara el acreedor al deudor cantidad alguna de dinero y sí la mera manifestación que se hace en el documento de haberla recibido con anterioridad a la fecha del otorgamiento del pagaré''; y declaró sin lugar la intervención y sostuvo la validez del embargo practicado por la demandante. Contra esa resolución se interpuso el presente recurso alegándose como único error de la corte inferior el siguiente:

''Que la Corte de Distrito de Humacao erró al resolver que la hipoteca sobre bienes muebles otorgada por Juan Estrada a favor del apelante Bernardo Álvarez Santos, y el pagaré que dicha hipoteca garantizaba, eran nulos por haber sido celebrados en fraude de acreedores.''

En realidad lo que se imputa a la corte inferior es haber decretado la rescisión de un contrato entre un deudor y un tercero, como celebrado en fraude de acreedores, sin que se haya alegado y probado el fraude, o en otras palabras, que la prueba practicada es insuficiente para justificar la sentencia apelada. Esto nos obliga a hacer un examen detallado de la prueba.

El interventor presentó en evidencia una copia del contrato de hipoteca de bienes muebles, con la nota de su inscripción en el registro, y el pagaré que la misma garantiza, en el que se hace constar que los $3,000 fueron recibidos por

Juan Estrada en dinero efectivo y en calidad de préstamo con anterioridad al acto del otorgamiento.

La parte demandante ofreció la siguiente prueba testifical:

Carlos del Río, Gerente del National City Bank en Caguas, declaró que de los récords del Banco no aparece que Bernardo Alvarez Santos tuviera cuenta alguna con dicho banco, ni que éste le haya hecho préstamo alguno al interventor, ni que descontara papel alguno que tuviera su firma.

Antonio Grillo, Auditor Municipal de Caguas, declaró que en las nóminas de pago del Municipio, que están a su cargo, aparece el nombre de Bernardo Alvarez Santos, como inspector de la limpieza pública desde agosto, 1930, a mayo de 1931, con sueldo de $12.64 semanales.

Juan Cebollero, agente de The Texas Co. en Caguas, declaró que no conoce al interventor; que éste está casado con una hermana de la señora del demandado, siendo por tanto concuñados; que en junio 13 de 1932 el demandado adeudaba dinero a The Texas Co.; que nunca recibió ningún cheque, pagaré a comprobante firmado por el interventor; que el declarante estuvo en el registro y que allí no aparecía más que una sola hipoteca a favor del interventor; que no le conoce bienes al interventor; que el demandado Estrada hacía mensualmente abonos a su cuenta con la Texas Co. Y repreguntado por el abogado del interventor declaró: Que no ha hablado con el interventor, no sabe dónde vive éste ni conoce a su señora; que no podría decir la cantidad que Estrada debía a la Texas en junio 13, 1932, pero con vista de una cuenta corriente puede decir que eran $1,970.85; que esa cuenta está garantizada con hipoteca sobre una casa de Estrada por $1,200, hipoteca que fué otorgada en junio 26, 1931, y está aún vigente.

Presentó la demandante una certificación del registrador en la que hace constar la inscripción de la hipoteca de los tres automóviles, y, además, que de los libros del registro no apa-

rece ninguna otra propiedad o derecho a favor del interventor Alvarez Santos.

De la opinión emitida por el juez sentenciador extractamos como fundamentos de su resolución los siguientes:

1ro. Que a pesar de que la hipoteca y los intereses vencidos eran exigibles desde diciembre de 1932, el interventor no inició procedimiento de ejecución y permitió que los bienes fuesen embargados por la demandante en marzo de 1933, dejando transcurrir noventa días sin practicar gestión alguna para hacer efectiva la hipoteca.

2º. Que no hay evidencia alguna en cuanto a la entrega material del importe del préstamo por el interventor al demandado.

3ro. Que cuando el demandado liquidó su cuenta con la Texas, en diciembre de 1932, y aceptó la deuda de $2,495.46, para esa misma fecha ya estaba vencida la hipoteca a favor del interventor.

Opina el juez sentenciador, que de esos hechos que acabamos de enumerar surge una fuerte presunción de que el otorgamiento del pagaré fué una simulación hecha con el único objeto de salvar para el demandado los automóviles embargados más tarde por la demandante; que para la fecha en que se practicó el embargo y para la fecha de la intervención la garantía hipotecaria ha debido estar ya ejecutada de haber sido cierta y efectiva; y que los hechos probados son símbolos evidentes de fraude.

Las conclusiones de derecho a que ha llegado la corte sentenciadora son insostenibles. No están ellas basadas en una prueba suficiente e incontestable, de la que deba surgir como consecuencia inevitable la presunción legal de que la transacción impugnada está viciada por el fraude.

La doctrina legal sobre la alegación del fraude como base de una causa de acción o como defensa, aparece enunciada así en Corpus Juris:

"La regla general es que el fraude 'que es criminal en su esencia,' y envuelve por lo menos torpeza moral, nunca se presume, sino que debe ser afirmativamente probado. Es decir, en acciones en ley y cuando el cargo específico de fraude va envuelto en casos en equidad, 'no solamente no se presume nunca el fraude, sino que debe ser afirmativamente alegado y probado por la parte que se basa en él,

ya sea con el propósito de atacar o de defenderse.' Por el contrario, un litigante no está obligado a probar la no existencia de un fraude que no ha sido directa o tácitamente probado por la parte que lo alegara. La presunción, si existe alguna, es en contra de la existencia del fraude y en favor de la inocencia, de la honradez, y de la pureza de la transacción. Aun cuando es costumbre casi universal de las cortes la de declarar que el fraude nunca se presume, a veces se expresa al principio con más exactitud al decir 'la ley nunca presume el fraude.' ''

27 C. J., párr. 170, pág. 44.

La cita que acabamos de hacer está sostenida por copiosa jurisprudencia, que creemos innecesario examinar en detalle. Entre los casos allí citados figura el de *Mancheño* v. *Le Brun,* 14 D.P.R. 474, en el que esta Corte Suprema dijo:

''El error y el dolo que vagamente se indican por los apelantes en modo alguno se derivan del documento mismo como se supone y estos motivos de nulidad que vician el consentimiento no se presumen nunca y hay que demostrarlos, cosa que tampoco se ha intentado siquiera por la parte que estaba a ello obligada por ser la que impugna la validez del contrato que la otra parte sostiene en toda su integridad.''

En decisiones posteriores a la del caso de *Mancheño* v. *Le Brum,* supra, esta corte ha reconocido y aplicado la regla general de que el fraude nunca se presume y que el que lo alega debe probar su existencia con hechos incontestables, pues no puede estimarse establecida la existencia del fraude por simples conclusiones, conjeturas y sospechas; y que las pruebas demostrativas del fraude deben ser sólidas, claras y convincentes. Véanse: *Ana María Sugar Co.* v. *Castro,* 28 D.P.R. 241; *Gómez* v. *American Colonial Bank,* 34 D.P.R. 148; *Ortiz* v. *Clausells,* 34 D.P.R. 536; *Sucrs. de Igaravídez* v. *Rubert Hnos.,* 23 D.P.R. 302; y *Arenas* v. *Batalla* 48, D.P.R. 31.

En el caso de autos, la demandante no hizo alegación específica de fraude. Se limitó a alegar, en contestación a la demanda de intervención, por información y creencia, que el pagaré y la hipoteca a favor del interventor son simula-

dos, nulos e inexistentes por falta de causa o consideración. No se alegó en manera alguna que la hipoteca y pagaré fueran otorgados con el fin o propósito de defraudar a la demandante, como acreedora del demandado, ni tampoco que la demandante no pudiera cobrar de otro modo la cantidad que le adeuda el demandado.

▉▉ Participamos hasta cierto punto de las dudas que este caso ha despertado en la mente del juez sentenciador, en cuanto a la realidad o existencia legal de la hipoteca que reclama el interventor. Pero esas dudas, esas conjeturas o deducciones, que son hijas de la experiencia y del conocimiento de las flaquezas humanas, adquiridas en el curso de la vida judicial, y que en el presente caso no están sostenidas por hecho específico alguno, no pueden dar origen ni servir de base a la presunción legal de que la hipoteca fué hecha con el propósito de defraudar a la acreedora demandante.

No se ha llamado nuestra atención hacia precepto o doctrina legal que nos autorice a presumir que una hipoteca de bienes muebles, otorgada en garantía de un pagaré negociable, es fraudulenta y como tal nula, por el solo hecho de que en el pagaré por ella garantizado se hace constar que el importe del préstamo fué recibido por el prestatario con anterioridad a la fecha del pagaré y no en el acto·de su otorgamiento. El interventor, como tenedor del instrumento negociable, que es la obligación principal, tiene a su favor la presunción legal de que el pagaré es válido y de que fué otorgado por causa justa y onerosa. Véase: Artículo 25 de la Ley (núm. 17) de Instrumentos Negociables (Leyes de 1930, pág. 183).

▉ La demandante, que es la que pide que se declaren nulos e inexistentes, es la que lleva el peso de la prueba para justificar su alegación de que el pagaré y la hipoteca carecen de fuerza legal por falta de causa y consideración y por haber sido otorgados en fraude de acreedores.

■■■ ¿Ha sostenido la demandante el peso de la prueba? Creemos que no. Opinamos que los que la corte inferior llama "hechos probados", o sea que el interventor no tenía cuenta en el National City Bank en Caguas; que fué empleado municipal durante un par de años anteriores a la fecha de la hipoteca, devengando un modesto sueldo; que el interventor y el demandado son concuñados; y que el primero no tenía propiedades inscritas en el Registro de Caguas con excepción de la hipoteca en cuestión, no son suficientes para que de ellos pueda deducirse como una conclusión legal que la hipoteca es fraudulenta. Todos esos hechos, asumiendo que estén sostenidos por la evidencia, son perfectamente compatibles con la legalidad de la hipoteca. El hecho de que el interventor no tuviera cuenta en el banco, no es prueba de que no tuviese en alguna otra parte la suma necesaria para hacer el préstamo al demandado; y tampoco lo es el hecho de que dos años antes de hacerse el préstamo, el interventor estuviera ganando un pequeño sueldo semanal. La relación de parentesco por afinidad entre el interventor y el demandado, asumiendo que se haya establecido, podría a lo sumo ser considerada como una circunstancia sospechosa, pero no puede bastar por sí sola para justificar una declaración de nulidad. Véanse: *Calzado v. Carrero,* 15 D.P.R. 369; *Moral & Co. v. Diez,* 16 D.P.R. 332; *González v. López,* 46 D.P.R. 843. La cita de Corpus Juris que hace la parte apelada, 27 C. J. Sec. 717, contiene una sabia doctrina que ayudaría grandemente al éxito de su contención si se hubiesen establecido las bases necesarias para hacerla aplicable.

Traduciremos la cita para que se vea claramente su inaplicabilidad al presente caso:

"Cuando las partes en el traspaso están emparentadas entre sí, *este hecho, en relación con otros hechos,* puede ser suficiente para levantar una presunción de fraude y transferir el peso de la prueba al cesionario para que establezca la buena fe por su parte al aceptar el traspaso y se ha sostenido que se requiere solamente una prueba ligera para hacer pasar el peso de establecer la buena fe de la tran-

sacción. Se levanta una presunción de fraude y se impone el peso de la prueba de buena fe al cesionario, *cuando en conexión con el hecho del parentesco, se han establecido otros hechos, tales como la insolvencia o circunstancias embarazosas de la parte que hizo el traspaso.''* (Bartardillas nuestras.)

En el caso de autos no existe alegación alguna, ni se presentó evidencia por la parte demandante, en relación con la solvencia o insolvencia del demandado antes, en el momento o después que éste otorgó el pagaré y la hipoteca. Tampoco aparece de la evidencia que la situación económica del demandado fuese en aquellos momentos o en fecha posterior difícil o embarazosa. La prueba demuestra más bien lo contrario, pues de ella aparece que el demandado era dueño de otra propiedad, sobre la cual constituyó hipoteca para garantizar $1,200 de su deuda a la demandante; que tenía un negocio de gasolina en Caguas; y que gozaba de crédito con la demandante hasta febrero 4 de 1933, fecha en que la demandante le hizo la última entrega de mercancías, con cargo a su cuenta corriente.

Estableceríamos un precedente sumamente peligroso si sostuviésemos que basta probar la existencia de relaciones de parentesco entre deudor y acreedor hipotecario, para que el acreedor del primero tenga derecho a que se presuma que ha habido fraude en la negociación y se dicte sentencia anulando el contrato de hipoteca. La jurisprudencia requiere algo más que la simple prueba de parentesco, que es la única que se ha presentado en este caso.

La jurisprudencia establecida por este Tribunal sostiene que para que una acción de la naturaleza de la que se ejercita en este caso pueda prosperar, el demandante, o sea el que alega el fraude, debe probar: (*a*) la existencia de una deuda a su favor; (*b*) que su deudor enajenó sus bienes con el propósito de defraudarle; (*c*) que ha sido perjudicado por la enajenación; y (*d*) que no tiene otro recurso legal para poder hacer efectivo su crédito. Véanse: *Domenech* v. *Rola,* 9 D.P.R. 95; *Vázquez* v. *Martínez,* 10

D.P.R. 453; *Sucn. Almazán* v. *López*, 20 D.P.R. 537; *Martínez* v. *Sucrs. de Cosío y Primo*, 38 D.P.R. 240, y *González* v. *López*, supra. Ni las alegaciones de la contestación, ni la prueba aducida por The Texas Co. cumplen con los requisitos que hemos enumerado. No se ha hecho alegación alguna, ni se ha presentado evidencia, al efecto de que el demandado careciera de otros bienes sobre los cuales pudiera hacerse efectivo el crédito de la demandante.

*Debe revocarse la resolución recurrida y en su lugar dictarse sentencia por esta corte declarando nulo y sin efecto el embargo trabado sobre los bienes hipotecados, por no haberse practicado de acuerdo con los requisitos exigidos por la Ley núm. 71 de 1930 (pág. 449).*

El Juez Presidente Señor del Toro no intervino.