GUERIN, APPELLANT, *v.* SUNBURST OIL & GAS CO., RESPONDENT.

(No. 5,280.)

(Submitted September 12, 1923. Decided October 4, 1923.)

[218 Pac. 949.]

*Injunction—Oil and Gas Lease—Option to Purchase—Recordation — Constructive Notice — Escrow — Delivery — Presumptions.*

Oil and Gas Lease—Recordation of Option to Purchase—When Constructive Notice of Unrecorded Lease.
1. Where, after giving an oil and gas lease upon his land to one party which lease was not recorded, the owner gave an option to purchase the land to another party subject to the lease, the option being recorded, plaintiff who purchased the land before the expiration of the option, was chargeable with constructive notice of

(365)

the option and its contents and hence of the provision therein that it was subject to the lease, and, in the absence of inquiry from the lessee, was not an innocent purchaser without notice and therefore not entitled to an injunction to prevent the lessee from going upon the land for the purpose of exploration.

Real Property—Option Contract—Effect.

2. The effect of an option to purchase land is to deprive the owner of the right to sell it to any person other than the optionee for the full period of the term of the option.

Same—Option to Purchase—Proper Book for Recordation.

3. Since an option to purchase land is not itself a contract to purchase the land, the book kept by the county clerk and recorder for the recording of contracts for the purchase or sale of real property is not, but the Miscellaneous Record Book required to be kept by subdivision 15 of section 4796, Revised Codes of 1921, for entry of "such other writings as are required or permitted by law to be recorded," is the proper book for recordation of such a contract.

Leases—Escrow—When Delivery Deemed to have Been Made.

4. Where an oil and gas lease had been placed in escrow and all conditions precedent to delivery had been complied with, it will be deemed to have been delivered under the doctrine that that which ought to have been done will be regarded as having been done.

*Appeal from District. Court, Cascade County; J. B. Leslie, Judge.*

ACTION by M. M. Guerin against the Sunburst Oil & Gas Company. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. Freeman, Thelen & Frary,* for Appellant, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

*Messrs. McIntire & Murphy* and *Mesesrs. Norris, Hurd & Rhoades,* for Respondent, submitted a brief; *Mr. Cleveland H. Hall,* of Counsel, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

For the purpose of these appeals, the facts involved in this controversy may be stated as follows:

In 1921 Mrs. Mary T. Thornton owned 320 acres of land [1] in Toole county. On August 26 of that year she gave to Gordon Campbell a lease upon the land, by the terms of which the lessee was, or his successors and assigns were, authorized

to go upon the premises and explore for oil, gas, hydrocarbons and other minerals, and, if any such minerals were discovered, to extract and market the same, paying to the lessor a specified royalty. The lessee agreed that, within three months from the date of the lease, he would commence drilling operations in the northeast part of the Rocky Ridge dome—a territory which embraced the Thornton land—and within twenty-four months from the date of the lease would commence sinking a well upon the leased premises. That lease was not recorded. On December 8, 1921, Mrs. Thornton gave to James L. Rock an option to purchase her land, but the option was made subject to the Campbell lease. The option was duly recorded on December 9 in the Miscellaneous Record Book of Toole county. In May, 1922, Campbell assigned his lease to L. C. Stevenson, and Stevenson in turn assigned it to the Sunburst Oil & Gas Company. Each of the assignments was duly recorded. On June 6, 1922, Mrs. Thornton conveyed her land to Mrs. M. M. Guerin by warranty deed. In August following the Sunburst Oil & Gas Company went upon the land and commenced to explore for oil and gas, when this action was commenced by Mrs. Guerin to secure an injunction restraining the company from continuing its operations.

In its answer to the complaint, the defendant set forth the foregoing matters and alleged that it was carrying forward its explorations pursuant to the terms of the Campbell lease, and that Mrs. Guerin had purchased the land with notice of the existence of that lease. After a hearing the trial court denied the application for an injunction and caused a judgment to be entered dismissing the complaint. From that judgment, and from the order denying an injunction, plaintiff appealed.

The ultimate question for determination is: Did plaintiff purchase the Thornton land with notice of the outstanding Campbell lease? As observed heretofore, that lease was not recorded; but section 6938, Revised Codes of 1921, provides:

"An unrecorded instrument is valid as between the parties and those who have notice thereof," and that notice may be either actual or constructive.

The trial court concluded from the evidence before it that Mrs. Guerin "purchased with constructive notice, at least, of the outstanding rights in defendant under said lease," and it is the correctness of that conclusion which is challenged by counsel for plaintiff. The trial court relied upon the record of the Rock option and the assignments of the Campbell lease, and the immediate question is: Did the record of those instruments, or the record of any of them, impart constructive notice to Mrs. Guerin of the existence and contents of the lease itself?

Section 6934, Revised Codes of 1921, provides: "Every conveyance of real property acknowledged or proved, and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees," *etc.*

Section 6935 declares that, as between two or more conveyances of the same property by the same person, the first recorded shall have precedence.

Section 6936 provides: "The term 'conveyance,' as used in the two preceding sections, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to real property may be affected, except wills."

The Rock option was in writing and imports a sufficient [2] consideration (sec. 7512, Rev. Codes 1921); however, it recites that it was given for a valuable consideration and its validity is not attacked. It conferred upon Rock and his assigns the right to purchase the Thornton land, at any time within one year, at $10 per acre, and the effect of that option was that Mrs. Thornton parted with her right to sell the property, except to Rock or his assigns, for the full term of one year. (*Ide* v. *Leiser*, 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.)

It is conceded by counsel for plaintiff, as it must be, that
[3] the option was an instrument by which the title to the
Thornton land might be affected, and hence was a conveyance
within the definition given in section 6936 above. It was re-
corded in the proper office and imparted constructive notice,
if it was recorded as prescribed by law (sec. 6934). But
counsel for plaintiff contend that it was not recorded in the
proper book, and therefore did not impart notice to Mrs.
Guerin. The argument in support of the contention proceeds
upon the assumption that an option to purchase land is in legal
effect a contract to purchase, and must be recorded in the book
kept for recording contracts for the purchase or sale of real
estate. The assumption is altogether erroneous, and the con-
clusion based upon it equally so. An option to purchase is
not an agreement to purchase. The distinction between the
two was pointed out so clearly in *Ide* v. *Leiser*, above, that
further discussion of the subject is unnecessary.

Section 4796, Revised Codes of 1921, requires the county
clerk, as *ex-officio* recorder, upon payment of his fees therefor
to record in separate books the various instruments enumerated
in the first 14 subdivisions of that section, and by subdivision
15 he is required, also, to record in a separate book "such other
writings as are required or permitted by law to be recorded."
He is required, also, to keep proper index-books, in which the
instruments recorded by him are to be indexed. Speaking in
general terms, he is required to keep two index-books for every
class of instruments, a direct and an indirect index-book.
Those index-books are enumerated in section 4799, Revised
Codes of 1921. Subdivision 27 requires him to keep "a mis-
cellaneous index, in which must be indexed papers not herein-
before stated" in the preceding twenty-six subdivisions.
Nowhere is it required that any of the record books shall bear
a particular label or designation. It is a matter of common
knowledge that it is the general practice to have on each book
a label designating the character of instruments recorded in it,
and that the book provided for in subdivision 15 of section

68 Mont.—24

4796 is designated the Miscellaneous Record Book, and that the index-book provided for by subdivision 27 of section 4799 is designated the Miscellaneous Index Book.

Since an option does not fall within any of the classes of instruments enumerated in the first fourteen subdivisions of section 4796, or within the first twenty-six subdivisions of section 4799, it follows that it must be recorded in the book for which provision is made by subdivision 15 of section 4796, and indexed in the book designated by subdivision 27 of section 4799. In the instant case the option recorded in the Miscellaneous Record Book was recorded as prescribed by law. (*Stephen* v. *Patterson*, 21 Ariz. 308, 188 Pac. 131.)

Section 6899, Revised Codes of 1921, reads as follows: "An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the county clerk's office with the proper officer for record." Since the option was an instrument entitled to be recorded, and was recorded as prescribed by law, it imparted constructive notice of its contents to Mrs. Guerin, who was a subsequent purchaser of the property affected by the option, from the time it was filed with the county clerk of Toole county on December 9, 1921. (Sec. 6934, above.)

One who purchases land from the owner, after the recording of an option given by the owner to another person to purchase the same land, takes with constructive notice of the option, and cannot claim to be an innocent purchaser. (*Chesbrough* v. *Vizard Inv. Co.*, 156 Ky. 149, 160 S. W. 725.)

The option recited that the right to purchase given to Rock was "subject, however, to one certain oil and gas lease given in favor of Gordon Campbell," and that recital constituted a part of the contents of the option as the term "contents" is used in section 6934 above. (*Taylor* v. *Mitchell*, 58 Kan. 194, 48 Pac. 859.) But Mrs. Guerin was chargeable, not merely with notice that such a recital was contained in the option; she was chargeable also with notice of all material facts which an inquiry suggested by that recital would have disclosed.

[68 Mont. 365.]

(*Fisher* v. *Bush,* 133 Ind. 315, 32 N. E. 924; *Loser* v. *Savings Bank,* 149 Iowa, 672, 31 L. R. A. (n. s.) 1112, 128 N. W. 1101; 2 Tiffany on Real Property, sec. 572.) She was bound to make inquiry of the owner of the lease, and, if she failed to do so, she is chargeable with notice of all that she would have learned if she had pursued the inquiry to the full extent to which it led. (*Crawford* v. *Chicago, B. & Q. R. Co.,* 112 Ill. 319; *Gaines* v. *Summers,* 50 Ark. 322, 7 S. W. 301.) In other words, she was chargeable with notice of the contents of the Campbell lease, though it was not recorded (*White* v. *Foster,* 102 Mass. 375; *Hancock* v. *McAvoy,* 151 Pa. 439, 25 Atl. 48; 2 Tiffany on Real Property, sec. 572), and she could not rely upon the representation by Mrs. Thornton that there was not any outstanding lease upon the property (*Bergstrom* v. *Johnson,* 111 Minn. 247, 126 N. W. 899; *Waggoner* v. *Dodson,* 96 Tex. 415, 73 S. W. 517; 39 Cyc. 1714).

If Mrs. Guerin had caused proper search of the records to be made before she purchased, she would have known of the defendant's right to prospect the property for oil and gas. If she did not cause such search to be made, she cannot invoke the aid of a court of equity to relieve her from the consequences of her own want of ordinary care and prudence.

There is a suggestion in the brief of counsel for plaintiff [4] that the Campbell lease was never delivered, and hence that the defendant was a naked trespasser upon plaintiff's land. The lease was in a bank at Sunburst, and the court found upon ample evidence that all conditions precedent to delivery had been complied with; in other words, that the lease ought to have been delivered. Equity regards that as done which ought to be done, or, as stated in section 8758, Revised Codes of 1921: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due."

There are other considerations, suggested by the record, which fortify the conclusion reached by the trial court, but

enough has been said to demonstrate the correctness of that conclusion.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.