ANGUS, APPELLANT, v. MARINER ET AL., RESPONDENTS.

(No. 6,461.)

(Submitted May 25, 1929. Decided June 29, 1929.)

[278 Pac. 996.]

*Mr. Frank Arnold* and *Messrs. Johnston, Coleman & Johnston,* for Appellant, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

*Messrs. Gibson & Smith,* for Respondents, submitted a brief; *Mr. Fred L. Gibson* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The only question presented on this appeal is whether plaintiff's mortgage is entitled to precedence over the mortgage of the defendant bank. The material facts are as follows: In 1916 Merrill Henry was the owner of 440 acres of land in Park county which he agreed to convey to one Lyons upon the payment of $10,000; a deed conveying the land pursuant to the contract was placed in escrow. Lyons agreed to convey the land to Sherrod and Sherrod agreed to convey it to Joseph H. Mariner. In each instance deeds were made out and placed in escrow; all being in the National Park Bank at Livingston. In the meantime Henry assigned to his mother, Julia E. Henry, his right to receive a part of the purchase price, to wit, $7,500 and interest thereon, due under the Lyons contract.

In December, 1922, Mariner determined to complete the purchase of the land. In order to do so he required over $8,000. To make up that sum of money he found it necessary

to negotiate the two loans which brought about this lawsuit. Prior to December 18, 1922, he applied to the Vermont Loan & Trust Company, having an office at Spokane, Washington, for a loan of $5,000, offering the Henry land as security. The application was approved and a promissory note for the amount and mortgage securing the same were prepared at the Spokane office of the company and sent to Mr. Hildreth, the company's Livingston agent, for execution. Note and mortgage were signed by Mr. Mariner and Mary Mariner, his wife, in the presence of Hildreth, but as Hildreth was not a notary public he took the mortgage to C. W. Hill, an abstracter, the understanding being that the mortgagors would call at Hill's office and acknowledge the execution of the mortgage, and that Hill would record the instrument and complete an abstract of the title to the property. The note and mortgage were signed and left with Hill before Christmas, 1922. Afterwards, Mr. and Mrs. Mariner acknowledged the execution of the mortgage before a notary public in the office of Mr. Hill. The date of the notary's certificate is January 26, 1923. The deeds from Merrill Henry and wife to Lyons, from Lyons and wife to Sherrod, and from Sherrod and wife to Mariner, were taken from escrow and placed of record with the mortgage from Mariner and wife to the Vermont Loan & Trust Company on January 26, 1923.

In the meantime Mr. Mariner negotiated a loan for $2,000 from the plaintiff. Mariner and wife signed a promissory note in plaintiff's favor for that amount and executed a mortgage securing the same, bearing date January 20, 1923. This mortgage was acknowledged January 22, 1923, and was placed of record the next day. The mortgage embraced the same property included in the mortgage to the Vermont Loan & Trust Company, with this statement: "The said premises are conveyed subject to a first mortgage heretofore made thereon, also subject to the terms and provisions of a certain contract to sell said premises to H. A. Espie and Nora Espie, dated September 19, 1921." (The Mariners had contracted to sell the premises to the Espies.) The mortgage to plaintiff also

included two tracts of land in Malheur county, Oregon, aggregating 336.21 acres, and this mortgage was recorded in Malheur county on February 3, 1923.

At the time of the execution of the mortgage to plaintiff there was no other mortgage in existence affecting the land here involved, except that to the Vermont Loan & Trust Company.

Afterwards, the Vermont Loan & Trust Company sold its note and mortgage to the defendant bank.

Mariner died October 20, 1925. Before his death he conveyed all his real property to his wife.

In September, 1926, the plaintiff brought this suit to foreclose his mortgage and to have it declared superior to the mortgage of the defendant bank. In its answer the bank pleaded that plaintiff, when he took his mortgage, had actual knowledge of the existence of its mortgage, which it prayed the court to determine superior to plaintiff's mortgage, and to enter an appropriate decree of foreclosure. After trial the court found the issues for the bank and entered a decree in which it ordered a sale of the Park county land with appropriate directions as to the disposition of the proceeds. From this judgment the plaintiff appealed.

Counsel for plaintiff argue with much ingenuity that there was no mortgage upon the land involved when plaintiff's mortgage was executed. They say that plaintiff's mortgage did not state that it was subject to a first mortgage about to be made, or a mortgage being negotiated, or a mortgage that had been signed, but a mortgage made. They say "a mortgage made means a mortgage fully and completely made, not partially made." They insist that it was not complete as to Mrs. Mariner, and cite section 5828, Revised Codes of 1921, which provides: "No act, deed, or conveyance, executed or performed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estates of married women * * * shall prejudice the rights of the wife to her dower or jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

There is no doubt that a mortgage is a conveyance within the meaning of the Recording Acts. (Rev. Codes 1921, secs. 6934–6938; *Hull* v. *Diehl,* 21 Mont. 71, 52 Pac. 782; *Mueller* v. *Renkes,* 31 Mont. 100, 77 Pac. 512.) But Mrs. Mariner's dower right is not in question. She was a joint maker of the bank's note and mortgage and at the time this action was commenced was the sole owner of the property subject to the mortgages. Whether, if the mortgage had never been acknowledged by her she could have defended against an action for its foreclosure brought by the mortgagee, is not material to this inquiry. In any event, such a defense is a privilege personal to her and plaintiff cannot make it for her; moreover, if she had the right she can waive it.

Plaintiff's argument overlooks the controlling principle that he will not be permitted to deny the existence of a mortgage prior to his own, of which he had notice by the very terms of his own mortgage; and if that prior mortgage be held good between the parties thereto it will be held good as to him. Having notice of a prior mortgage upon the property, he proceeded at his peril. If he had inquired, and the means of information were at his command, he could have learned the facts respecting the first mortgage, to which his mortgage was expressly made subject. Now if he had learned the facts respecting the first mortgage as they existed on the twentieth day of January, 1923, and knowing them had put his mortgage on record first, intending thereby to give it precedence, would any court permit him to maintain the intended advantage? The question carries its own negative answer. The language in his mortgage, "subject to a first mortgage heretofore made thereon," is quite as potent as if the language had been "subject to a first mortgage heretofore made thereon by the mortgagors herein to Vermont Loan & Trust Company as mortgagee on the 18th day of December, 1922, in the sum of $5,000." Under the facts shown notice given him by the language appearing in his mortgage amounted to actual notice.

"It may be said that notice derived from the recitals in the deed to a purchaser is actual, though it clearly rests upon

a presumption of law. It may be called actual, however, in the same sense that a written notice delivered to a party who never reads it may be called actual notice.'' (Wade on the Law of Notice, sec. 308.)

Section 8780, Revised Codes of 1921, provides that notice is ''1. Actual—which consists in express information of a fact. 2. Constructive—which is imputed by law.''

''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts.'' (Sec. 8781, Rev. Codes 1921.) Our statute also provides that an unrecorded instrument is valid as between the parties and those who have notice thereof. (Sec. 6938, Id.) A conclusive presumption is ''the truth of the facts recited, from the recital in the written instrument between the parties thereto.'' (Sec. 10605, subd. 2, Id.)

The general rule is that ''one who takes a mortgage or other lien upon property with actual knowledge of an earlier although unrecorded conveyance of it, or lien upon it, takes it subject thereto, and will not be permitted by placing his mortgage first on record to gain priority over the earlier lien. This rule is not altered by the fact that the prior instrument is imperfect in itself, or is defectively executed, since notice of a prior equitable title is sufficient in this behalf.'' (41 C. J. 552, 553; 2 Pomeroy's Eq. Jur., 4th ed., sec. 626; *Piccolo* v. *Tanaka*, 78 Mont. 445, 253 Pac. 890.)

The plaintiff was chargeable, not merely with notice that the recital appeared in his mortgage, but also with notice of all material facts which an inquiry suggested by the recital would have disclosed. He was bound to make inquiry of Mariner and if he failed to do so is chargeable with notice of all that he would have learned if he had pursued the inquiry to the full extent to which it led. He was charged with notice of the contents of the mortgage which the Mariners had signed and placed in the hands of the agent of the Vermont Loan & Trust Company, even though it was not yet acknowledged, or if it could then be considered imperfect. (*Guerin* v. *Sunburst Oil*

*& Gas Co.,* 68 Mont. 365, 218 Pac. 949.) Plaintiff did not make any such inquiry, as the evidence clearly shows. He assumed, it seems, that the recital in his mortgage referred to moneys which were due Mrs. Henry upon the purchase price, but he had no right to make any such assumption. It was incumbent upon him to inform himself thoroughly of the meaning and intent of the recital which appeared in his mortgage. He cannot now escape from the result of his own carelessness by the subterfuge that the first mortgage was incomplete when he placed his mortgage of record. (*Guerin* v. *Sunburst Oil & Gas Co.,* supra; 41 C. J. 555, 556; *Johnson* v. *Abbe,* 105 Kan. 658, 185 Pac. 738.)

The judgment of the district court was correct and it is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.