MARIO MERCADO E HIJOS, demandante y apelante, *v.* ELVIRA OLIVIERI COMMINS, MANUEL FRANCISCO LLUBERAS PASARELL, ETC., demandados y apelados. EL MISMO v. ELVIRA OLIVIERI COMMINS y EMILIO BLASINI TOTTI, demandados y apelados.

Núms. 8501 y 8502.—*Sometidos:* Julio 14, 1942. *Resueltos:* Julio 31, 1942.

*Pedro M. Porrata,* abogado de la demandante apelante; *José S. Sabater* y *José Oliver Sabater,* abogados de la Sra. Olivieri Commins, apelada; *Luis López de Victoria* y *Leopoldo Tormes,* abogados de los demandados de apellidos Lluberas Pasarell y Blasini Totti, apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Las cuestiones fundamentales envueltas en estos recursos son las mismas. Se trata de fijar el alcance de cierta cláusula contractual y de su aplicación en relación con otros contratos celebrados, uno de venta y otro de arrendamiento, de acuerdo con los hechos y la ley.

Tres veces han sido sometidas dichas cuestiones a este tribunal, la primera en un pleito sobre desahucio, la segunda en mociones sobre desestimación, por frívolos, de los recursos establecidos contra las sentencias que las resolvieron en determinado sentido dictadas en pleitos ordinarios, y la tercera en esos mismos recursos en sus méritos.

Al decidir el desahucio dijimos que no eran propias para ser en él resueltas, confirmando la sentencia recurrida. *Lluberas* v. *Mario Mercado e Hijos,* 55 D.P.R. 41. Al resolver

la moción de desestimación, que no eran claramente frívolas. Debemos ahora disponer de ellas en definitiva, poniendo fin al litigio.

Los pleitos fueron iniciados en la Corte de Distrito de Ponce por Mario Mercado e Hijos el mismo día—7 de abril de 1937—contra Elvira Olivieri, Manuel Francisco Lluberas y otros el de resolución de compraventa, y contra la propia Elvira Olivieri y Emilio Blasini el de resolución de arrendamiento, y resueltos por sentencias del 6 de octubre de 1941, basadas en una sola opinión.

Para pedir la resolución del contrato de compraventa celebrado entre la demandada señora Olivieri y los Lluberas y su subrogación en los derechos de éstos, la demandante alegó sustancialmente en la demanda que doña Elvira Olivieri otorgó cuatro pagarés al tenedor por endoso, garantizados con hipoteca sobre sus condominios de una mitad proindivisa en las fincas "Juanita" e "Indios," que colindan con terrenos pertenecientes a la demandante en la jurisdicción de Guayanilla.

Que en la misma escritura en que se constituyó hipoteca para garantizar los pagarés, doña Elvira reconoció adeudar a la demandante Mario Mercado e Hijos la cantidad de $41,256.89 y ésta convino en aceptarle los pagarés en concepto de pago de la suma adeudada. Que se convino además, como parte de la consideración del contrato, que doña Elvira se comprometía a dar a la demandante preferencia para la compraventa y arrendamiento de sus condominios en igualdad de precio y condiciones, mientras estuviera en vigor la hipoteca, y que en caso de venta en violación de tal convenio, la demandante quedaba facultada para ejercitar la acción de retracto, y que se estipuló también en la referida escritura que la división material de los condominios en los predios "Juanita" e "Indios" no podía llevarse a cabo sin el consentimiento de la sociedad Mario Mercado e Hijos mientras estuvieran vigentes los vales hipotecarios.

Se alega además que la demandante cedió el montante de los vales hipotecarios a la sucesión de don José Tous Soto, y que, al hacerse la citada cesión, se pactó con la predicha sucesión reservarse para sí la sociedad demandante, como se reservó, el derecho de opción y retracto a que se hace referencia.

Que el traspaso de los vales hipotecarios llevóse a cabo el 9 de mayo de 1933, y el 21 de agosto de 1936 la demandada doña Elvira Olivieri y su hermana doña Santia llevaron a efecto la división material de sus condominios en las fincas hipotecadas, y a tenor de la escritura de hipoteca la sociedad Mario Mercado e Hijos compareció a prestar su consentimiento para el susodicho acto.

Establecidos así los hechos preliminares, se sigue alegando en la demanda que los demandados se confabularon entre sí con el deliberado propósito de defraudar a la demandante y durante la vigencia de la cláusula de opción que se transcribe íntegramente vendieron las fincas adjudicadas a doña Elvira en pago de sus condominios, sin notificar a la demandante de proposición alguna de compraventa y con conocimiento todos los demandados del derecho de opción que sobre los citados bienes tenía en la fecha en que se efectuó la mencionada compraventa la demandante. Mario Mercado e Hijos.

La demandante alega entonces su voluntad de retraer la propiedad de los demandados que la adquirieron en virtud de la alegada confabulación, se declara dispuesta a satisfacer el mismo precio pagado por los compradores y, para demostrar la buena fe de su intención, acompaña a su demanda y hace formar parte de la misma otra acción de consignación radicada en la secretaría de la corte e instada después de haber requerido a todos los demandados para que le traspasaran el título de las propiedades vendídasle.

La demandada doña Elvira Olivieri Commins radicó contestación separada y los restantes demandados la suya conjuntamente.

A través de dichas contestaciones los demandados admitieron todo lo alegado en los párrafos 1, 2, 3, 4, 5, 7, 9 y 10 de la demanda, negando los restantes párrafos y estableciendo, por vía de defensa especial, las siguientes:

(a) Que la cláusula séptima de la escritura número 13 del 23 de marzo de 1932 fué impuesta por la demandante a la demandada cuando ésta era deudora de la demandante; que cuando dicho pacto de opción de compraventa y arrendamiento se impuso en la referida escritura, la demandante no era deudora de los inmuebles y sí acreedora de los mismos; que la demandante no podía adjudicarse los bienes de la demandada en el caso de incumplimiento del contrato garantizado con hipoteca ni podía prohibir a la demandada que enajenara o dispusiera libremente de dichos bienes, y que el pacto de opción de compraventa o retracto fué extinguido al pagar totalmente la demandada Elvira Olivieri el crédito hipotecario de referencia, perdiendo el derecho de retracto la demandante al ceder el crédito hipotecario a la sucesión Tous Soto, habiendo, además, dicho derecho prescrito por el transcurso de más de cuatro años desde que se concedió. (Artículos 1397 y 1078 del Código Civil.)

(b) Que dicha cláusula séptima es nula además por equivaler la misma a un pacto por el cual se autoriza al acreedor hipotecario a adjudicarse la finca de la hipotecante por virtud de incumplimiento del contrato garantizado con hipoteca. (Secciones 2 y 4 de la Ley 47 del 13 de abril de 1916, para reprimir la usura.)

(c) Por equivaler el mismo a un pacto por el cual se prohibe a la deudora hipotecaria enajenar o disponer libremente de sus bienes. (Inciso 4 del artículo 107 de la Ley Hipotecaria; *Van Syckel* v. *Registrador de la Propiedad,* 3 D.P.R. (segunda edición), página 10, y *Clausells* v. *El Registrador,* 20 D.P.R. 313.)

(d) Por estar en contradicción con el artículo 1412 del Código Civil.

(e) Por pretender crear un derecho increable, o lo que es lo mismo, un derecho de retracto a ejercitarse por uno que no fué vendedor de la finca y sí acreedor hipotecario.

(f) Porque de ser válido dicho derecho de retracto la demandante no cumplió con los términos de ley en cuanto al extremo de la consignación, ya que la que ella verifica la hizo en pieza aparte, en vez de hacerlo dentro del caso de epígrafe.

En la demanda sobre resolución de contrato de arrendamiento, se hacen sustancialmente las mismas alegaciones, con la única variante que se alega en el apartado 11, que doña Elvira Olivieri, con anterioridad al 8' de marzo de 1937, en confabulación con el otro demandado Emilio Blasini Totti, dió a éste en arrendamiento la finca rústica denominada "Juanita," que se describe.

Los demandados contestaron separadamente la demanda, admitiendo ciertos hechos de la misma y negando los demás, y alegando también las mismas defensas alegadas por los demandados en el caso sobre resolución de contrato de compraventa.

Celebrada la vista en la corte de distrito en el caso sobre resolución de compraventa, presentándose evidencia documental y testifical, las partes estipularon someter el de resolución de arrendamiento por la prueba practicada en el de resolución de compraventa, y luego archivaron sus alegatos en ambos. La corte tomó bajo su consideración ambos pleitos y como resultado de las admisiones hechas en las contestaciones de los demandados y de la evidencia introducida por ambas partes apreciada en conjunto, declaró probados los siguientes hechos:

"Por la escritura pública núm. 13 de 23 de marzo de 1932 ante el notario Fernando Zapater Martínez, la demandada Elvira Olivieri Commins garantizó con hipoteca sobre sus condominios en las fincas "Juanita" e "Indios" cuatro vales pagaderos al tenedor por endoso, que ella otorgó, y al mismo tiempo reconoció adeudar a la demandante Mario Mercado e Hijos la cantidad de $41,256.89, y esta sociedad convino en aceptarle los pagarés en concepto de pago de la suma adeudada.

"Dicha escritura de hipoteca contiene, entre otras, la siguiente cláusula:

" '*Séptima:* Opción de Venta y Arrendamiento.—No obstante lo expuesto en la cláusula precedente, la deudora, como parte de la consideración de este contrato, conviene con la sociedad Mario Mercado e Hijos, mientras no se salde el crédito hipotecario aquí constituído, en darle preferencia para la venta o arrendamiento, de sus condominios en las fincas "Indios" y "Juanita," en igualdad de precio y condiciones. A este fin, la deudora comunicará, mientras no se pagare el crédito hipotecario, por carta certificada a Mario Mercado e Hijos, cualquier proposición de venta o arrendamiento que se le hiciere y dicha sociedad tendrá un término de treinta días para aceptar o no las proposiciones y durante dicho plazo la deudora no podrá efectuar venta o arrendamiento a otra persona. Caso de venta o arrendamiento en violación de este convenio, Mario Mercado e Hijos tendrá el derecho de retracto contra el comprador o arrendatario, el cual derecho podrá ejercer en el término de treinta días desde la inscripción de la venta o arrendamiento para subrogarse en el lugar, grado y prelación del·comprador o arrendatario.'

"Por escritura pública núm. 33 de 9 de mayo de 1933, ante el notario de Ponce, Sr. Fernando Zapater Martínez, la sociedad Mario Mercado e Hijos cedió a la sucesión de don José Tous Soto el referido crédito hipotecario, mediante el correspondiente endoso y entrega, por parte de dicha sociedad Mario Mercado e Hijos a la sucesión de Tous Soto, de los cuatro pagarés hipotecarios antes mencionados. En esta escritura de cesión de crédito no aparece que la sociedad Mario Mercado e Hijos se reservara los derechos de opción de venta y arrendamiento, especificados en la cláusula séptima de la escritura núm. 13 de 23 de marzo de 1932, cuya cláusula séptima se deja transcrita más arriba en esta opinión. Tampoco aparece probado que se hiciera tal reserva de derechos en el Registro de la Propiedad, en la inscripción correspondiente a la cesión del crédito hipotecario.

"La deudora Elvira Commins fué notificada de la cesión del crédito, mediante una copia simple de la escritura de cesión.

"Por la escritura núm. 30 de 25 de febrero de 1937 ante el notario señor Luis López de Victoria, Elvira Olivieri Commins constituyó hipoteca sobre las referidas fincas 'Juanita' e 'Indios' por $45,000 a favor del demandado Manuel Francisco Lluberas Pasarell, reteniendo éste en su poder $41,000 para satisfacer el crédito hipotecario constituído a favor de Mario Mercado e Hijos y cedido a la sucesión de José Tous Soto.

"Por la escritura núm. 47 de 8 de marzo de 1937 ante el notario señor Fernando Zapater, y previa la correspondiente autorización judicial, la sucesión de don José Tous Soto canceló el crédito hipotecario contra doña Elvira Olivieri Commins, el que le había sido cedido a la referida sucesión por la demandante Mario Mercado e Hijos.

"Por la escritura núm. 40 de 9 de marzo de 1937, ante el notario señor Luis López de Victoria, la demandada Elvira Olivieri Commins vendió por precio de $40,000 la finca 'Indios' al otro demandado Manuel Francisco Lluberas Pasarell.

"Por otra escritura, la núm. 41, de la misma fecha 9 de marzo de 1937 y ante el mismo notario señor López de Victoria, Elvira Olivieri Commins dió en arrendamiento al otro demandado Emilio Blasini Totti la finca rústica denominada 'Juanita.'

"En la escritura núm. 72 otorgada en Ponce ante el notario señor Fernando Zapater el día 31 de marzo de 1937 (o sea, después que la sucesión de don José Tous Soto había cancelado la hipoteca), se hizo constar por dicha sucesión que 'la cesión verificada por la sociedad Mario Mercado e Hijos a favor de dicha sucesión no incluía el derecho o los derechos consignados a favor de Mario Mercado e Hijos en la cláusula séptima sobre opción de venta y arrendamiento contenida en la escritura de hipoteca núm. 13 de 23 de marzo de 1932 (*exhibit* "J" de la demandante); reservándose Mario Mercado e Hijos los derechos y obligaciones de dicha cláusula durante todo el tiempo en que la hipoteca estuviese en vigor.'

"La escritura núm. 72 supra, fué aprobada por esta Corte de Distrito de Ponce, según sentencia dictada en 7 de abril de 1937 en el caso civil núm. 299 de esta corte (exhibit "E" de la demandante).

"Mediante la escritura núm. 7 de 7 de abril de 1937, ante el notario Sr. Pedro M. Porrata, se requirió a Elvira Olivieri Commins para que recibiera determinada suma de dinero en cumplimiento de la referida cláusula séptima sobre opción de venta y arrendamiento; habiéndose negado a ello doña Elvira Olivieri Commins. Entonces la sociedad Mario Mercado e Hijos, en 8 de abril de 1937, consignó en la secretaría de esta corte de distrito en el caso núm. 310, sobre consignación, la suma de $45,359.50, según recibo núm. 702 del secretario (exhibit H de la demandante).

"Y luego la demandante, en 8 de abril de 1937, radicó las demandas en los casos números 311 y 312, sobre resolución de compraventa y resolución de arrendamiento, respectivamente.

"También se ha probado que en la escritura núm. 73 de 20 de agosto de 1936 (cuando todavía estaba vigente el crédito hipotecario cedido a la sucesión de José Tous Soto) la sociedad Mario Mercado e Hijos intervino en dicha escritura núm. 75, sobre división material de finca rústica, y otros extremos, escritura otorgada ante el notario señor Tomás Paz Ruiz (exhibit "A" de la demandante), y prestó su consentimiento para la referida división de comunidad de bienes.

"También se ha probado que ni Elvira Olivieri Commins ni ninguno de los demandados, ni persona alguna a nombre de ellos, comunicaron en ninguna forma a la aquí demandante Mario Mercado e Hijos, con anterioridad a la fecha en que fueron convenidos, el arrendamiento y la compraventa de las fincas 'Juanita' e 'Indios' ni en ningún tiempo después; viniendo Mario Mercado e Hijos a tener conocimiento de dichas transacciones el día 10 de marzo de 1937. Y que dicha sociedad siempre estuvo y está dispuesta a subrogarse en el lugar de los compradores y arrendatarios de dichas fincas en los mismos precios y cánones y condiciones de los contratos de compraventa y arrendamiento cuya resolución se solicita.

"Aparece también probado que tanto Elvira Olivieri Commins como todos los demás demandados en los casos números 311 y 312, tuvieron conocimiento, antes de celebrarse los contratos de compraventa y arrendamiento, del derecho de opción de compra y arrendamiento que tenía Mario Mercado e Hijos en relación con las fincas 'Juanita' e 'Indios.'

"Del testimonio de Elvira Olivieri Commins (página 55 de la transcripción de evidencia) resulta probado que ella autorizó a su yerno Rafael Barletta para discutir con Mario Mercado e Hijos negociaciones de arrendamiento o venta de los predios 'Juanita' e 'Indios.'

"De la declaración de José R. Peralta, administrador de la sociedad demandante (páginas 135 y siguientes de la transcripción de evidencia) y de ciertos telegramas y cartas que en dicha declaración se mencionan y que fueron admitidos como evidencia, resulta probado que desde diciembre de 1936 hasta mayo 8 de 1937 estuvieron Rafael Barletta y la sociedad Mario Mercado e Hijos en conversaciones y entrevistas sobre posible compra y arrendamiento de los referidos inmuebles a Elvira Olivieri Commins por la sociedad demandante."

Y declarados probados esos hechos, procedió a resolver las cuestiones de derecho, así:

"Siete cuestiones de derecho levantan y discuten los abogados de ambas partes en sus respectivos alegatos.

"Las hemos estudiado y considerado todas, pero a nuestro juicio, las que tienen principal importancia para la resolución de estos casos son las siguientes:

" '1. Si la demandante probó o no probó confabulación y fraude por parte de los demandados a los fines de burlar los derechos de dicha demandante en lo pertinente a la referida cláusula séptima de opción de venta y arrendamiento.

" '2. Si quedó o no quedó extinguida a virtud del pago de la hipoteca que le tenía constituída doña Elvira Olivieri Commins a Mario Mercado e Hijos (exhibit ''J'' de la demandante), la cláusula séptima de dicha escritura sobre opción de venta y arrendamiento de dicha deudora hipotecaria a favor de la referida firma.

" '3. Si al enajenar Mario Mercado e Hijos a la sucesión de don José Tous Soto el crédito hipotecario a que se contrae el exhibit ''J'' de la demandante, también enajenó los derechos consignados en dicha cláusula séptima de opción de venta y arrendamiento.'

"Para una consideración lógica de estas cuestiones legales, invertiremos el orden en que se dejan enunciadas, empezando por la número 3.

"El artículo 152 de la Ley Hipotecaria lee como sigue:

" 'El crédito hipotecario puede enajenarse o cederse a un tercero en todo o en parte, siempre que se haga en escritura pública de que se dé conocimiento al deudor, y que se inscriba en el Registro.

" 'El deudor no quedará obligado por dicho contrato a más que lo estuviere por el suyo.

" 'El cesionario *se subrogará en todos los derechos del cedente.*' (Subrayado nuestro.)

"Los términos en que está redactada la escritura de cesión del crédito hipotecario son muy claros y no dejan lugar a dudas sobre la intención de los contratantes, por lo que debe estarse al sentido literal de sus cláusulas (artículo 1233 Código Civil, ed. 1930), y no deberán entenderse comprendidas en dicho contrato cosas distintas y cosas diferentes de aquellas sobre que los interesados se propusieron contratar (art. 1235 del mismo Código). (*Sweet* v. *Zalduondo*, 26 D.P.R. 349; *Loíza Sugar Co.* v. *Hernáiz*, 35 D.P.R. 518; artículo 26 de la Ley de Evidencia.)

"Según el artículo 1759 del Código Civil, la hipoteca es esencialmente indivisible. La opción de venta y arrendamiento era parte sustancial de dicho contrato y, por consiguiente, era inseparable de

la hipoteca (*G. Llinás & Cía.* v. *Sucesión Bartoly (sic)*, 47 D.P.R. 574; *Montilla* v. *Van Syckel et al.*, 8 D.P.R. 160; *Puente* v. *Pérez et al.*, 7 D.P.R. 186).

"El artículo 1418 del Código Civil, ed. de 1930, lee como sigue:

" 'La venta o cesión de un crédito comprende la de *todos los derechos accesorios*, como la fianza, hipoteca, prenda o *privilegio.*' (Itálicas nuestras.)

Manresa en sus Comentarios al Código Civil, volumen 10, páginas 402 a 409, comentando el artículo 1418 y siguientes de dicho Código (ed. de 1930), entre otras cosas consigna lo siguiente:

" 'Ahora bien, cuando nada se dice, lo lógico es suponer, como la ley supone, que al cederse lo principal se cede también lo accesorio, que viene a ser como su complemento.

" 'En lo que sí estamos conformes es en que, en el caso de venderse un crédito sujeto a una condición resolutoria, cuyo cumplimiento depende de la sola voluntad del acreedor, no puede éste, después de cedido el crédito, hacer que la condición se cumpla. De una parte, porque al pactar la cesión se desprendió de su carácter. Y de otra, porque la cesión supone la renuncia de su facultad que viene a ser con ella incompatible.'

"Al ceder Mario Hercado e Hijos a la sucesión Tous Soto el referido crédito hipotecario hizo un pacto especial sobre los intereses del crédito, pero no hizo ningún pacto de reserva sobre la cláusula de la opción de venta y arrendamiento. Tampoco se hizo ninguna mención de dicha cláusula por la sucesión Tous Soto, cuando solicitó permiso de esta corte para convertirse en cesionaria del crédito, ni tampoco cuando se solicitó permiso para cancelar dicho crédito por la referida sucesión.

"La escritura núm. 72 de fecha 31 de mayo de 1937 ante el notario Sr. Zapater, sobre ratificación de crédito hipotecario, otorgada por la Sucesión Tous Soto (exhibit 'F' de la demandante), así como el expediente núm. 299 de esta corte sobre aprobación de dicha escritura, no tienen ningún valor en estos casos, por haber sido otorgada dicha escritura núm. 72 después de haber sido cancelado totalmente el crédito hipotecario por la sucesión de José Tous Soto.

"Por todo lo expuesto, llegamos a la conclusión de que 'al enajenar Mario Mercado e Hijos a la sucesión de José Tous Soto el crédito hipotecario, también enajenó los derechos consignados en la cláusula séptima de opción de venta y arrendamiento.'

"La cuestión núm. 2 de derecho, después de lo anteriormente expuesto al estudiar la cuestión núm. 3, la resolvemos en la afirma-

tiva; llegando, como llegamos, a la conclusión de que 'la cláusula séptima de la escritura núm. 13 de 23 de marzo de 1932 (exhibit "J" de la demandante) sobre opción de venta y arrendamiento, quedó extinguida a virtud del pago de la hipoteca constituída por Elvira Olivieri Commins a favor de Mario Mercado e Hijos.' (Artículo 1110, Código Civil, ed. 1930).

"Ahora resolveremos la cuestión de derecho levantada bajo el número 1, o sea 'si la demandante probó o no confabulación y fraude, por parte de los demandados, a los fines de burlar los derechos de la demandante en lo pertinente a la referida cláusula séptima sobre opción de venta y arrendamiento.'

"Habiendo llegado la corte a las dos conclusiones anteriormente consignadas al resolver, como resolvió en la afirmativa las cuestiones de derecho levantadas bajo los números 3 y 2, consecuentemente tiene que llegar a la conclusión de que Mario Mercado e Hijos, al iniciarse estos pleitos en 8 de abril de 1937, no tenía ningún derecho o interés sobre la hipoteca que se había constituído a su favor por Elvira Olivieri Commins y, que Mario Mercado e Hijos había cedido a la Sucesión de José Tous Soto.

"'*.      *       *       *       *       *       *

"' 'El fraude debe probarse con hechos incontestables, o por lo menos con una preponderancia de prueba, pues su existencia no puede estimarse establecida por simples conclusiones, conjeturas y sospechas.' *Gómez* v. *American Colonial Bank,* 34 D.P.R. 148; *Arruza* v. *Langier,* 15 D.P.R. 25.

"' 'Estando toda presunción en contra del fraude y necesitándose algo más que una mera sospecha para probar su existencia, debe aquél demostrarse por medio de pruebas que sean claras, sólidas y convincentes.' *Ortiz* v. *Clausells,* 34 D.P.R. 536.

"' 'El juzgador no debe impresionarse por la denuncia de fraude al extremo de agrandar la importancia de todo hecho sobre el que se pueda suscitar la sospecha de haberse cometido, y desdeñar más lógicas deducciones compatibles con la buena fe.' *Sabalier* v. *Iglesias,* 34 D.P.R. 352.

"La corte llega a la conclusión de que no se ha probado confabulación y fraude por parte de los demandados hacia la demandante en estos casos.

"Y habiendo llegado a las precedentes conclusiones, la corte entiende que es innecesario considerar las otras cuestiones de derecho levantadas y discutidas en estos casos por los abogados de ambas partes.''

Las sentencias se registraron de conformidad y la demandante en ambos pleitos apeló para ante esta Corte Suprema. Se han presentado varios alegatos y se han celebrado dos vistas en las cuales se discutieron las cuestiones envueltas desde todos los ángulos imaginables. A nuestro juicio los hechos declarados probados por el tribunal sentenciador quedan en pie y sus conclusiones de derecho permanecen inalterables.

En un alegato suplementario archivado por la parte apelante, se hace la siguiente cita:

"La inscripción de un instrumento otorgando la opción según lo exige la ley es, desde luego, una notificación constructiva de tal opción a un comprador posterior. *Chesbrough* v. *Vizard Invest. Co.* (1913), 156 Ky. 149, 160 S. W. 725; *Kinberger* v. *Doruet* (1921), 149 La. 986, 90 So. 367; *Guerin* v. *Sunburst Oil & Gas Co.* (1923), 68 Mont. 365, 218 Pac. 949. En el último caso que se cita dijo la corte:

"'Toda vez que la opción era un instrumento que podía ser inscrito, y fué inscrito según lo disponía la ley, dicho instrumento le dió notificación constructiva de su contenido a la señora Guerin, que era un comprador posterior de la propiedad afecta a la opción, desde el momento en que se radicó ante el secretario del condado de Toole, en diciembre 9, 1921, sección 6934, arriba copiada. El que compra terrenos al dueño de éstos, después que se ha inscrito una opción otorgada por el dueño para comprar dichos terrenos, los adquiere con notificación constructiva de la opción, y no puede pretender ser un comprador inocente.'"

Si al traspasar la demandante sus pagarés a la sucesión Tous Soto se hubiera reservado expresamente el derecho de opción y al inscribirse el traspaso se hubiera hecho constar la reserva en el registro, entonces sí que hubiera podido partir de la base del conocimiento de dicha reserva por parte de los demandados con todas las consecuencias que pudiera tener para los mismos. La inscripción del primitivo contrato en el registro y la del segundo sin reserva de ninguna especie sobre la opción, permitía a los demandados actuar con respecto a la demandante de acuerdo con su interpretación de lo que era la ley. Y ya hemos visto que la ley era que el

traspaso sin reservas de los vales hipotecarios llevaba consigo el de la opción. Por tanto, si algún riesgo en cuanto a la demandante se decidieron a asumir los demandados al actuar en la forma en que lo hicieron, fijada la regla legal aplicable, desapareció por completo.

*Los recursos deben declararse sin lugar y confirmarse las sentencias recurridas.*