## Chesbrough v. Vizard Investment Company, et al.

(Decided November 26, 1913).

### Appeal from Letcher Circuit Court.

1.  Principal and Agent—Contract of Agency—Duration—Termination.
    —A mere contract of agency, conferring power to sell real estate,

not coupled with an interest, is revocable at the will of the principal where the duration of the agency is not fixed.

2. Principal and Agent—Agency—Revocation.—A contract of agency not coupled with an interest, and containing no stipulation as to time, is revoked by an option given by the principal to a third party.

3. Contracts—Recordable Instrument—Option Contract.—An · option contract giving to the optionee the right to purchase at any time within six months, when properly acknowledged and proven according to law, is a recordable instrument.

4. Fraud—Option Contract—Evidence.—On a plea of fraud in the execution of an option contract, evidence examined and held insufficient to sustain the plea.

5. Land—Bona Fide Purchaser.—One purchasing lands from the agent of the grantor and taking deed, after a valid and enforceable option has been given to a third party and recorded as required by law, is not a bona fide purchaser, but takes subject to the right of the optionee to exercise the option within the time fixed by the option contract.

MARTIN T. KELLEY, C. F. KELLEY for appellant.

BAILEY P. WOOTTON, JESSE MORGAN and LEWIS E. HARVIE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, Commissioner—Reversing.

On January 15, 1909, W. T. Campbell and wife entered into a contract with the North Fork Coal & Timber Company, by which the latter was authorized to sell Campbell's land, consisting of 200 acres located in Letcher County, Kentucky, at the price of $10 an acre. Omitting the description of the land, the contract is as follows:

"We, the undersigned, do hereby list our lands for sale with the North Fork Coal & Timber Company, and they are authorized to sell our lands for us at the price of $10 per acre, and the said company agrees to use due diligence to sell our lands at the price of $10 per acre. (Here follows description.)

"Now, as we are wanting to sell our lands, we do make and appoint the said North Fork Coal & Timber Company our sole agents to sell our said lands, and upon the payment of the price of $10 per acre, which we agree to accept in full payment and satisfaction thereof, and giving our said agents all over and above the aforesaid price for which they sell said lands, as their commission for making sale, and the undersigned shall furnish a com-

plete abstract showing title in him, and thereupon convey or tender to the grantee or purchaser from said agents, their heirs or assigns, deed containing covenants of general warranty with the exact number of acres.

"Witness our hands and seal, this 15th day of January, 1909.

"W. T. Campbell,
her
"Polly x Campbell"
mark

"Witness:
     "J. M. Hall."

The contract, though not acknowledged or proven according to law, was recorded in the clerk's office of Perry County, where a portion of the land lay.

On April 27, 1910, W. T. Campbell and wife executed and delivered to M. Cox, of Cincinnati, Ohio, a six months' option on the same tract of land. Omitting the caption, that contract is as follows:

"Witnesseth, that for and in consideration of $25.00 in hand paid, the receipt of which is hereby acknowledged as part payment upon the sum of $11.00 per acre, balance whereof is to be paid in six months from this date hereof, The following real estate in Letcher County, Kentucky, on the waters of Bull Creek on the north by the lands of J. P. Cornett, on the east by the lands of John Hanes. On the south by the lands of W. B. Lusk, on the west by the lands of W. B. Lusk, and contains 200 acres, more or less.

"The condition of this agreement or contract is as follows: That should said second parties pay or cause to be paid first parties their heirs or assigns at any time within the life of this agreement or the contract the sum of $11.00 per acre for the land herein described, then said first parties shall at the time of said payment execute to said second parties, their heirs or assigns or successors a general warranty deed for said land, the acreage of said tract of land to be determined by actual survey at the expense of said second parties, M. Cox, at the expiration of six months from date thereof.

"In the event this contract is not exercised within six months from date hereof, same shall be null and void."

This contract was proven by the oath of D. Y. Combs, one of the subscribing witnesses, to be the act and deed of W. T. Campbell and wife, and the same witness also proved the attestation of John H. Campbell, the other

subscribing witness thereto. The contract was recorded in the Letcher county clerk's office on April 28, 1910. On August 17, 1910, M. Cox assigned and transferred the contract to R. F. Fields. The assignment was acknowledged before a notary public in and for Hamilton County, Ohio. Thereafter R. F. Fields, for value received, transferred and assigned all his right, title and interest in and to the contract to F. P. Chesbrough.

On September 6, 1910, W. T. Campbell and wife conveyed to the Vizard Investment Company the land in controversy.

During the month of October, 1910, plaintiff, F. P. Chesbrough, brought this action against the Vizard Investment Company, setting forth the contract made by W. T. Campbell and wife with M. Cox, and alleging that he was the owner thereof by assignment, and that the Vizard Investment Company had acquired title to the land by or from Campbell and wife with full knowledge of plaintiff's rights to the land. He further stated he was ready, willing and able to pay for the land according to the contract price, and asked that the defendant be required to convey it to him. Thereafter plaintiff filed an amended petition, asking that W. T. Campbell and wife be made party defendants, and that the deed from them to the Vizard Investment Company be cancelled, and that Campbell be compelled to convey said land. The several defendants filed separate answers, in which they denied the allegations of the petition, and alleged that the contract under which plaintiff claimed was not binding and valid. They further pleaded that the contract made by the Campbells with the North Fork Coal & Timber Company was executed prior to the option given to M. Cox, and that the deed to the Vizard Investment Company was made pursuant to said contract. They further alleged that the option contract executed by the Campbells to Cox was procured by fraud. To these several answers plaintiff filed replies denying the validity of the contract made by the Campbells with the North Fork Coal & Timber Company, and pleading that plaintiff was an innocent purchaser for value without notice.

On final hearing, the plaintiff's petition was dismissed, and he appeals.

To support the charge of fraud, defendants introduced W. T. Campbell, who testified that R. F. Fields and D. Y. Combs came to his home for the purpose of getting a contract on the land in question. He had previously

given to Jim Hall a contract for the North Fork Coal & Timber Company. When Fields and Combs approached him they told him that the contract he had given Jim Hall was no account. Plaintiff said that he had already given one contract, and they knew it as well as he did. He then told them that for that reason he did not want to give another; that he was afraid it would get him into trouble. They then told him they would stand between him and all danger; that the North Fork Coal & Timber Company was no good, and would never pay for the land, and also told him that the Vizard Investment Company would not take it. That he was very anxious to sell his land and get away from there and buy him a farm, as the land there was not good for farming purposes. He relied on the statements of Campbell and Fields and believed they were true, and would not have executed the option contract had it not been for these statements. At the same time, however, he took from D. Y. Combs an agreement that Combs was to stand between him and any trouble, and in case of suit was to pay attorneys fees and court costs. Over the objection of plaintiff, defendant introduced in evidence a letter purporting to have been written by the North Fork Coal & Timber Company, through A. C. Rinehart, president, and dated April 27, 1910, in which that company stated that in answer to his letter of the 25th, they would say that the lands had been sold to the Vizard Investment Company of Mobile, Alabama; that surveyors were in the section surveying the lands, and that his lands would be taken up as soon as surveyed, and abstracted and the titles found good. There was no attempt to prove the genuineness of the letter, nor is it shown at what time the letter was received. One or two other witnesses present also stated that Combs and Fields represented to Campbell that the contract of the North Fork Coal & Timber Company was no good, and that it would never take the land.

For plaintiff, Combs and Fields testified that Campbell said that he had given a contract to the North Fork Coal & Timber Company, but that it had run out, and he did not consider that the company's contract was any good. They told him they did not think so either. He then said he would sell his farm if they would pay him $25 down. His wife, who was present, was afraid Campbell would get into a law suit, and thereupon Fields told him that he would stand between him and any law suit, and this agreement was embodied in the contract. After

taking the contract, Combs had it recorded in Letcher County. In June or July, Combs went to Detroit and sold the contract to Chesbrough. He never told him of any of the conversations he had with Campbell.

It will be observed that the contract between Campbell and the North Fork Coal & Timber Company simply authorized the latter to sell his lands at the price of $10 an acre, and contained an undertaking on the part of Campbell to pay it as commissions the excess of the purchase price over the price fixed in the contract. It did not convey or purport to convey any interest in the land to the North Fork Coal & Timber Company. No time limit was fixed by the contract. In other words, the power to sell not being coupled with an interest, it was simply an agency contract, and the duration of the agency not being fixed by the contract, it was revocable at any time by the grantor. Farraday Coal & Coke Co. v. Owens, etc., 26 Ky. L. Rep., 243, 80 S. W., 1171; 19 Cyc., 192; Neal v. Lehman, 11 Tex. Civ. App., 461, 34 S. W., 153; Noble v. Mann, 32 Ky. Law Rep., 30, 105 S. W., 152; 31 Cyc., 1310. There are cases holding that where a broker has expended a great deal of time and money in endeavoring to make a sale, his agency cannot be terminated until after he has had a reasonable time to effect the same. In the present case, no such state of facts appears, and, furthermore, the contract of agency had been in force for over a year, and no sale had been made. It is true that there appears in the record a letter purporting to have been written by the North Fork Coal & Timber Company, by its president, to W. T. Campbell, advising him that a sale of the land in question had been made to the Vizard Investment Company. This letter is dated April 27, 1910. As stated before, however, the genuineness of the letter is not proven, and though dated April 27, 1910, it does not satisfactorily appear when the letter was actually received by Campbell. There is, therefore, no satisfactory proof to the effect that the sale of the land had been made prior to the day that the option was given to M. Cox. But even if a valid sale had been made, and Fields and Combs, the agents of Cox, were apprised of this fact, there being nothing in the record to show that they were in any sense the agents of Chesbrough, or that Chesbrough had notice of the prior sale, mere notice to them was not notice to him. Hardin v. Harrington, 11 Bush, 367; Arnett v. Owens, 65 S. W., 151; 30 Cyc., 1761. There being no valid sale of the lands prior to the

option contract executed by Campbell to M. Cox, we conclude that the execution of that contract constituted a revocation of the agency so far as the parties to this contract are concerned. Farraday Coal & Coke Co. v. Owens, *supra*.

By the contract of April 27, 1910, W. T. Campbell, for a consideration of $25, gave to M. Cox the right to purchase the lands in controversy at any time within six months upon the payment of $11 an acre. This contract being for a valuable consideration was binding and enforceable at the option of Cox, or of plaintiff, his assignee, if exercised within the time limit fixed by the contract. This contract being for an interest in land, and being properly acknowledged by Campbell and wife, was recordable, and was actually recorded in the clerk's office of Letcher County. It not appearing by any satisfactory evidence that the Vizard Investment Company purchased the lands in controversy prior to the execution of the option contract, any title that it thereafter acquired was necessarily acquired with notice of the existence of the option contract, which was then of record. That being true, the Vizard Investment Company cannot be said to be an innocent purchaser for value without notice.

The only other question to be determined is whether or not the option contract was obtained by fraud. When reduced to its final analysis, the evidence of fraud is that Fields and Combs represented to Campbell that the North Fork Coal & Timber Company contract was not binding, and that it would not take the lands. As a matter of fact, it was not binding if Campbell elected to revoke the agency. It had never agreed to take the lands, and therefore any statement that it would not do so cannot be considered as a fraud on Campbell's rights. Taking into consideration the fact that Campbell himself was of the opinion that the agency contract was not binding, and the further fact that he was anxious to dispose of his lands, and was to get a higher price therefor if the option was exercised, and was also to be protected against any suit by the North Fork Coal & Timber Company, we conclude that the plea of fraud is not substantiated by the evidence.

As Cox, or plaintiff, his assignee, claim under the option the right to purchase the lands in controversy within six months from the date thereof, and as Campbell and wife had put it out of their power to comply with their

undertaking by conveying the land to the Vizard Invest-ment Company, it was not necessary for plaintiff to de-mand performance by Campbell before filing suit. In this suit he did demand performance, and averred his readiness, willingness and ability to pay for the lands in accordance with the terms of the option contract. Under these circumstances, we conclude that plaintiff, who ac-quired his rights to the land under and by virtue of the option contract, which was executed prior to any valid sale to the Vizard Investment Company, is entitled to have the deed to that company set aside and a conveyance of the property decreed to him. If it be true, as the rec-ord seems to show, that the Vizard Investment Company has paid all the purchase money to Campbell, the pur-chase money to be paid by plaintiff will be used to reim-burse it before any of same is paid over to Campbell.

Judgment reversed and cause remanded for proceed-ings consistent with this opinion.