**THOMPSON et al. v. COMPTON.**

Court of Appeals of Kentucky.
Dec. 5, 1952.

Rehearing Denied Feb. 13, 1953.

Lee S. Jones, Louisville, for appellants.

H. Bemis Lawrence, Louisville, for appellee.

SIMS, Justice.

Appellee, Mrs. Chesley Compton, a real estate broker in Louisville, brought this action against appellants, L. B. Thompson and wife, for $775 commissions under a contract wherein the Thompsons listed their home in Jefferson County with appellee for sale. The answer was a general denial. At the conclusion of all the evidence the court directed a verdict in favor of appellee for the full amount asked in the petition. While the motion and grounds for a new trial assigns seven errors, in reality they all go to the question of whether or not the court erred in directing a verdict for appellee and in not directing one in favor of appellants.

Appellee had acted as broker in selling this property to the Thompsons and the parties were acquainted and on friendly terms. The Thompsons decided to sell their home and Mrs. Thompson called appellee over the telephone and listed the property with her for a quick sale at $15,000 and agreed to pay a commission of 5% of the selling price. Appellee told Mrs. Thompson she would advertise the property and price it at $15,500, as she wanted to be in a position to make a reduction in the price when a purchaser was found. This was agreeable to the Thompsons. This telephone conversation occurred on or about March 20, 1950. Appellee spent $75 in advertising the property for sale in a local newspaper.

Mrs. Evelyn Philpot saw the advertisement and learned from a personal friend that the price was $15,500. On April 1, 1950, Mrs. Philpot and her husband, without calling on appellee, went to look at the house and appeared to be so well pleased

with it that Mrs. Thompson advanced the price $500 and asked the Philpots $16,000 for it.

Immediately after the Philpots left, Mrs. Thompson called appellee over the telephone and told her the Philpots were so enthusiastic about the property that she was certain they would pay $16,000 for it. Appellee replied she had been pricing the property at $15,500 and had given Mrs. Philpot that figure and Mrs. Thompson could not raise the price to $16,000. Mrs. Thompson then told appellee to sell the property at $16,000 or not to sell it. On April 7, 1950, Mrs. Philpot and her husband signed a contract with appellee wherein they agreed to pay $15,500 cash for the property. This fact was communicated to the Thompsons over the telephone and they refused to accept it.

There is no contrariety in the evidence as to the terms of the brokerage contract and as to the time the Philpots were willing to purchase the property at $15,500, or as to the time the Thompsons attempted to revoke the contract; hence there was nothing to submit to the jury.

It is the contention of the Thompsons that as this contract was for no specific time and was unilateral, they could revoke or terminate it at any time before the sale. They cite such authorities as 12 C.J.S., Brokers, § 66, page 150; Restatement of the Law of Agency, § 453(b), p. 1065; Frazier v. Cox, Ky., 125 S.W. 148; Chesbrough v. Vizard Inv. Co., 156 Ky. 149, 160 S.W. 725. These authorities support this legal proposition, but the weakness in appellants' case is that they did not terminate the contract before appellee furnished them a purchaser who was ready, able and willing to buy the property. It is not disputed that appellee had produced a purchaser at $15,500, the price appellants listed the property with her. The Thompsons by refusing to sell at this figure could not release themselves from liability for the commission by raising the price $500 and then terminating the contract when appellee refused to agree to the raise. The authorities relied upon by appellants hold that where the contract is unilateral, the owner may revoke it before the broker has

performed her part of the undertaking. In the case at bar, the broker's undertaking was to produce a purchaser, ready, willing and able to buy the property at $15,500. Odem Realty Co. v. Dyer, 242 Ky. 58, 45 S.W.2d 838. This the appellee did before appellants revoked the contract. Of course, had the Philpots not expressed a willingness to go through with the deal, the Thompsons could have terminated the contract. But they could not terminate it after appellee had produced a purchaser ready, willing and able to buy.

As there was no contrariety in the facts and as they show the broker had performed her part of the contract before it was revoked by appellants, the trial judge properly instructed the jury to find for the broker the full amount of her commission. The judgment is affirmed.