Jessie W. COZART, Gladys Cozart, his wife, Carroll County Industrial Development Foundation, a Corporation, Appellants,

v.

Don TURLEY and Jerry Stafford, Appellees.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Rehearing Denied March 10, 1967.

William G. Reed, Carrollton, for Jessie W. Cozart and Gladys Cozart.

Alfred W. Minish, Carrollton, for Carroll County Industrial Development Foundation.

Berry & Floyd, New Castle, for appellees.

DAVIS, Commissioner.

Appellants Jessie W. Cozart and Gladys Cozart own a tract of land in Carroll County and have given an option to purchase it to appellant Carroll County Industrial Development Foundation (hereinafter CCIDF) and have contracted to sell it to appellees Turley and Stafford, subject to the rights of CCIDF under the option. The Cozarts filed this action seeking a declaration of rights and a determination of whether CCIDF or Turley and Stafford had the superior right to a deed. The trial court adjudged that Turley and Stafford had priority, and the appellants challenge that ruling.

By writing dated March 24, 1964, the Cozarts purported to grant an option to CCIDF's predecessor, wherein the Cozarts agreed, in pertinent part as follows:

"That for and in consideration of the sum of $1.00 * * * the said parties of the first part have granted unto the party of the second part and their successors and assigns, the exclusive right and option to purchase the following described real estate."

A metes and bounds description of the land is contained in the writing, following which appears this language:

"The parties of the first part propose to sell the said land to industry for the

purpose of erecting an industrial plant thereon, and the purchase price is to be $700.00 per acre cash in hand paid to the parties of the first part.

"When the parties of the second part have found a purchaser for the said property, and all forms and conditions have been agreed upon, the parties of the first part agree to execute and deliver to the party of the second part, or to whomever they may sell the said option, a good fee simple unincumbered deed, conveying the full fee simple title to the said property."

The option agreement provides that unless it shall have been exercised by January 1, 1965, it shall remain in force until 60 days after the Cozarts furnish written notice of termination.

On October 1, 1965, the Cozarts gave written notice to CCIDF of their election to terminate the option as of December 1, 1965. On October 15th, 1965, the Cozarts entered into a contract of sale with Turley and Stafford by which they agreed to sell the same land included in CCIDF's option, excepting therefrom " * * * the house and lot now occupied by the grantors herein as a residence * * *." The agreed sales price was $30,000, of which $6,000 was paid at the time the contract was executed. The contract contained this clause:

"It is understood between the parties hereto that the vendors herein have granted an option to a third party for the sale of the premises herein, which option shall expire on or about December 1, 1965, but if the said third party or its assigns shall elect to exercise said option before its expiration, then this agreement shall be null and void and the vendors shall return the $6,000 paid by the vendees herein."

On November 28, 1965, CCIDF furnished written notice to the Cozarts advising that CCIDF wished " * * * to exercise the option as per agreement dated March 24, 1964." The notice related that the necessary purchase money had been deposited in escrow, to be paid to the Cozarts upon delivery of unincumbered title. The closing paragraph of the notice to exercise the option stated:

"We further understand that the prior agreement includes the entire tract of real estate described in the option with the exception of the house and lot which acreage will be further described by a survey conducted by an engineer approved by both parties."

It will be noted that the option to CCIDF's predecessor had not expressly referred to an exclusion of the residence and lot, but had merely contained a detailed description of the property as containing 56 acres, more or less, from which 5.7 acres had theretofore been conveyed, leaving about 50 acres in the tract described. One of the persons who had negotiated the 1964 option with the Cozarts testified that it had been orally agreed that when and if the option was exercised the residence and lot would be retained by the Cozarts. Opposing this was evidence from Turley and Stafford that Mr. Cozart told them he wanted "loose" from the option because it was at $35,000 and would include his residence. Neither of the Cozarts gave testimony touching this point; such evidence as was given was by way of discovery depositions only.

In its answer CCIDF recited that it had caused a survey to be made, excluding the house and a lot for it, so that the land to be claimed under the option contained 48.41 acres. CCIDF tendered its check in the sum of $33,887 as payment for the 48.41 acres @ $700 per acre, and submitted a proposed deed containing a revised description of the property so as to reserve the residence and lot to the Cozarts.

The trial judge ruled that the 1964 writing from the Cozarts to CCIDF was not an option, but merely an agency agreement in

**484**

which CCIDF undertook to act as a selling agent of the land. In the findings of fact and conclusions of law the trial judge discussed Faraday Coal & Coke Co. v. Owens, 80 S.W. 1171, 26 Ky.Law Rep. 243, and regarded that precedent as governing the present litigation. We are unable to concur in the conclusion of the trial court. It is our view that the writing did create a valid option, not merely an agency arrangement.

As called to our attention by appellees, there appears a general text discussion in 2 C.J.S. Agency § 2, p. 1034, pointing up the distinctions between contracts of agency to sell and options to purchase real estate. The general principles are thus summarized:

"An option to purchase certain real estate on given terms within a specified time does not make the holder of the option an agent of the owner, but rather creates the relation of vendor and purchaser, but a contract authorizing one to sell land for the owner on prescribed terms for a commission creates an agency rather than an option. The relation is to be determined by the terms of the contract between the parties expressing their intention, although their own designation of it is entitled to some weight; and, where intent to create an agency appears, the contract will be so construed although it purports to be an option, as where the option is a mere form of agency given to secure to the agent control of the negotiations, or to lend him the appearance and character of a purchaser for the effect it may have on others, and it is not intended that he shall acquire title or become a purchaser. There is no inconsistency in a contract which creates an agency to sell and also gives the agent an option to purchase during his agency." 2 C. J.S. Agency § 2, p. 1034.

Faraday Coal & Coke Co. v. Owens, 80 S.W. 1171, 26 Ky.Law Rep. 243, and

Chesbrough v. Vizard Inv. Co., 156 Ky. 149, 160 S.W. 725, are among decisions from this jurisdiction which discuss the legal principles. We think it is plain that the option afforded CCIDF more than an agency to sell. It will be observed that the instrument is denominated as "option and contract;" it recites that the second party is granted "the exclusive right and option to purchase from the date hereof;" the Cozarts agreed to execute a deed "to the party of the second part, or to whomever they may sell the said option." There is nothing in the option to suggest that the optionee is a mere broker selling on a commission. It is patent that the parties recognized that the intent and purpose of the optionee was to effect a means whereby a suitable industry might be established in the community, and although it may well have been supposed that the ultimate purchaser would take a deed directly from the Cozarts, there is nothing in the instrument which precludes the optionee from buying the property "on its own." We do not deem it inconsistent to recognize the intention of the optionee to purchase the land on its own account as distinguished from its procuring an industrial purchaser. The very situation which has developed suggests the sound basis for the optionee's assuring itself of protection.

It is most significant that in the sales contract between the Cozarts and the appellees the existing arrangement between the Cozarts and the "third party" was described as an "option." The sales contract fully recognized that the "third party" had a right to buy the property, and made careful provision that the contract would be "null and void" in the event the third party should exercise its "option." The Cozarts certainly regarded their relationship with CCIDF as one of option when the sales contract with appellees was executed; so did the appellees. Obviously the CCIDF so regarded it.

It is suggested for appellees that even if the writing be deemed an option,

it was an unenforcible one because it was indefinite as to duration, description of property and other details. This argument overlooks the fact that the appellees never saw the option until this suit was filed; they placed no reliance upon its being unenforcible. All they knew was that if the "third party" exercised its option, then the appellees had no contract of purchase. The "third party" had the option to buy the entire tract at $700 per acre; if it had done so it is plain that these appellees would have had no enforcible contract against the Cozarts. Does the fact that CCIDF permitted the Cozarts to retain the residence despite the option's failure to grant that right make any difference? We do not think so.

■ In Faraday Coal & Coke Co. v. Owens, 80 S.W. 1171, 26 Ky.Law Rep. 243, it was held that the holder of an option could not pay *less* than provided in the option and thereby defeat the rights of one who had acquired those rights subject to the option. It seems to us that the rationale of that decision lies in the fact that by offering *less* than provided in the first option there simply was no exercise of the option, but just a counter-offer; thus the counter-offer was actually later and inferior to the rights which had been acquired subject to the original option. We have no doubt that had CCIDF advised the Cozarts of its election to exercise the option exactly as written it could have made a gift to the Cozarts of the residence and lot, but the appellees could have no benefit from it. It is our view that the option holder does exercise the option when he gives as much or more than the option requires.

■ Appellees have directed attention to Murphy Thompson & Co. v. Reid, 125 Ky. 585, 101 S.W. 964, 10 L.R.A.,N.S., 195, for the proposition that there was no consideration for the option. It is observed, however, that after discussing the inadequacy of the consideration for the option, the court held that since the offer to sell contained in the option was accepted before withdrawal the question of consideration became immaterial. The same situation prevails here. CCIDF accepted the offer of the Cozarts before it was withdrawn. It cannot be reasoned that the Cozarts "withdrew" the offer to sell when they notified CCIDF on October 1st that the offer would expire sixty days later; on the contrary they affirmatively recognized that the offer was to remain open for sixty days. The appellees also recognized that the offer was extant when they contracted with reference to it on October 15th. Since the Cozarts and CCIDF are not in dispute as to the details of the option, it does not lie in the mouths of the appellees to raise any objection in these respects. The judgment is reversed with directions to enter a new one requiring that the conveyance be made to CCIDF according to its answer.